[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-10334

Non-Argument Calendar

_____

SHERRELL DOWDELL-MCELHANEY,

Plaintiff-Appellant,

*versus*

GLOBAL PAYMENTS INC,
TOTAL SYSTEMS SERVICES LLC,
f.k.a. Total System Services Inc,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia

D.C. Docket No. 4:20-cv-00289-CDL

—————————————

Before NEWSOM, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

This appeal arises out of the district court's grant of summary judgment to Total Systems Services, LLC ("TSYS"), and its parent company, Global Payments Inc., on Sherrell Dowdell-McElhaney's claims brought under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, the Age Discrimination in Employment Act of 1967, and the Fair Labor Standards Act. Proceeding *pro se* on appeal, Dowdell-McElhaney argues that the district court erred in granting summary judgment to TSYS and Global on her discrimination and retaliation claims. For the reasons discussed below, we disagree and determine that he district court properly granted summary judgment.

## I.    Background

Dowdell-McElhaney, initially proceeding *pro se* below, filed her initial complaint on November 20, 2020. After multiple rounds of motions and the filing of amended complaints, Dowdell-McElhaney obtained counsel, who filed a notice of appearance and the operative Third Amended Complaint ("TAC").[1]

A.  *Dowdell-McElhaney's Employment History with TSYS*

---

[1] The complaint was incorrectly titled as the Second Amended Complaint but was actually the Third Amended Complaint.

At the time of initiating this lawsuit, Dowdell-McElhaney was a 56-year-old black woman who suffered from long-term disabilities resulting from a car accident. She holds a Bachelor of Arts in Political Science, a Juris Doctor, and a Master of Laws degree in Litigation and was hired by TSYS in 2014 as a Fraud Analyst II. When she arrived for her first day of work, however, TSYS informed her that "their needs had changed" and offered her the position of Customer Service Representative I, which she viewed as an inferior position. Nevertheless, Dowdell-McElhaney accepted the position as a Customer Service Representative "on the condition that she be considered for a transfer to Fraud Analyst II should such a position become available." Despite her request, she alleged that she was not given the opportunity to fill any of the Fraud Analyst II positions that became available; instead, those positions were filled by younger, white applicants who had less education and experience than Dowdell-McElhaney. Accordingly, Dowdell-McElhaney voluntarily resigned from her employment with TSYS after six months.

Despite voluntarily resigning from her position as a Customer Service Representative, Dowdell-McElhaney again applied for employment with TSYS in November 2015, this time as a Paralegal II. Although she interviewed for the job, TSYS "ultimately hired a young[,] white female" who had "no prior legal experience, training, or knowledge." A few months later, however, TSYS hired Dowdell-McElhaney as a Fraud Analyst II and she began working in this role in February 2016.

In March 2018, Dowdell-McElhaney informed TSYS that she had been in a severe car accident and requested an accommodation to use a sit-and-stand desk.  TSYS denied her request, but according to Dowdell-McElhaney, granted similar requests to younger, white employees.  Over the next two and a half years, she continued to request a sit-and-stand desk, submitting new medical documentation with each request, but TSYS continued to deny her requests.  She also alleged that she frequently worked in excess of forty hours per week but was not compensated at the appropriate overtime rate.

Starting in 2018, Dowdell-McElhaney began applying for open positions, which would have been considered promotions from her Fraud Analyst II position.  Although she submitted over 60 applications, she did not receive a single interview.  She believed that she was denied the opportunity for these promotions because of her race, sex, age, disability, and requests for a sit-and-stand desk.  The positions for which she applied were allegedly filled with young, white candidates "who were less educated, experienced, and qualified" than Dowdell-McElhaney.  She further alleged that she was harassed, bullied, and retaliated against by TSYS, including by being assigned to work in a cubicle in an area that was unofficially known as the "dungeon."

In May 2019, TSYS selected Michael Murphy, a younger, white co-worker of Dowdell-McElhaney's, for a position on the newly created First Party Fraud team.  Dowdell-McElhaney was not invited to work on the new team, and she asked her supervisor,

a black man named Clarence Anderson, that she be considered for the position. Anderson told her that Murphy's selection was a "business need" and that she was "doing well" in her role in the out-bound division of the fraud department. She was not selected for a position on the First Party Fraud Team.

Based on her belief that she was being discriminated against, Dowdell-McElhaney met with an Equal Employment Opportunity Commission ("EEOC") investigator in September 2019. On the same day she met with the investigator, Dowdell-McElhaney filed an age-discrimination charge with the EEOC. Several days later, Dowdell-McElhaney informed Anderson of the filed charge and informed him of her belief that she was being discriminated against on based on her race, age, gender, and disability. Anderson gave Dowdell-McElhaney permission to make copies of any documents related to her employment, so long as she did so on breaks, and did not make copies of confidential customer information.

With Anderson's permission, Dowdell-McElhaney began making copies of relevant documents during her breaks. However, one day, Anderson was absent from work while she was making copies and a Human Resources associate, Chris Yarborough, discovered that Dowdell-McElhaney had copied an e-mail conversation that contained the last four digits of a customer's credit card number. Yarborough thereafter confiscated Dowdell-McElhaney's security badge and she was escorted out of the building. The next day, however, Yarborough called Dowdell-

McElhaney and informed her that their investigation had found no wrongdoing, and that she could return to work, which she did on the next workday.  Thereafter, Dowdell-McElhaney alleged that she was retaliated against by being given an increased workload, being given less desirable assignments, and continually being denied promotion opportunities.

In April 2020, TSYS began sending employees home due to the COVID-19 pandemic.  Dowdell-McElhaney alleged that TSYS was selective in who they allowed to work from home, and disproportionally selected younger, non-black employees to telework while requiring black employees to continue working in-person.   When Dowdell-McElhaney requested permission to telework due to her and her husband's health problems, Anderson refused, citing productivity concerns.   However, Dowdell-McElhaney later went to Human Resources, who gave her permission to telework.  She alleged that in retaliation for going around her supervisors, Anderson and her other supervisors increased her workload.

On November 11, 2020, Dowdell-McElhaney was informed that she was under review for falsely indicating that she had called a customer twice, when in fact she had only called once, and thus her teleworking status was being revoked.  One week later, she was terminated for violating TSYS's policies, rules, and procedures.  Specifically, she was fired because an investigation had discovered that Dowdell-McElhaney engaged in a practice of call avoidance, a method whereby a fraud analysist either "(1) fails to place one or

more outbound calls but notes that the calls were made, or (2) places an outbound call and then fails to engage the cardholder when the cardholder answers."

On August 21, 2020, approximately three months before she was terminated, the EEOC issued an age-discrimination right to sue letter to Dowdell-McElhaney ("First Charge"). In April 2021, Dowdell-McElhaney filed a second charge of discrimination with the EEOC, alleging that TSYS (1) discriminated against her on the basis of race and sex and retaliated against her in violation of Title VII of the Civil Rights Act; and (2) discriminated and retaliated against her based on her disability in violation of the Americans with Disabilities Act. The EEOC issued her a second right to sue letter on April 28, 2021, for these alleged other acts of discrimination and retaliation. After receiving the second right to sue letter, Dowdell-McElhaney filed the operative TAC for the purpose of adding the claims in the second letter.

The TAC brought the following nine claims:

- Count I – Age Discrimination in Violation of the Age Discrimination in Employment Act ("ADEA), 29 U.S.C. § 623;
- Count II – Retaliation in Violation of ADEA;
- Count III – Discrimination on the Basis of Race in Violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a);
- Count IV – Discrimination on the Basis of Sex in Violation of Title VII;

- Count V – Retaliation in Violation of Title VII;
- Count VI – Discrimination in Violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a);
- Count VII – Failure to Provide Reasonable Accommodations in Violation of the ADA
- Count VIII – Retaliation in Violation of the ADA; and
- Count IX – Failure to Pay Overtime Wages in Violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201(a)(1).

B. *Motion for Partial Judgment on the Pleadings*

TSYS and Global answered the TAC and denied liability while raising several affirmative defenses. They then moved for partial judgment on the pleadings, arguing that Dowdell-McElhaney had failed to exhaust her administrative remedies regarding her age-related retaliation claims because the First Charge related to Dowdell-McElhaney's failure to be selected for the First Party Fraud team only and the Second Charge did not discuss age discrimination; and Dowdell-McElhaney's Title VII and ADA claims had to be limited to actions that occurred within 180 days of the filing of her Second Charge. Thus, they asserted that the only claims in the TAC that could proceed were (1) Dowdell-McElhaney's claim for age discrimination for not being selected for the First Party Team; (2) her Title VII and ADA claims based on actions occurring within 180 days of the Second Charge; and (3)

23-10334                Opinion of the Court                9

her FLSA overtime claim.    Dowdell-McElhaney opposed the motion.

Ultimately, the district court granted in part and denied in part TSYS's and Global's motion for partial judgment on the pleadings.  It determined that Dowdell-McElhaney had exhausted only her age discrimination claims as related to her non-selection to the First Party Fraud Team, as alleged in the First Charge, and for failure to promote, which it determined was adequately alleged in the Second Charge.  Furthermore, it determined that Dowdell-McElhaney's ADEA retaliation claims for failure to promote and wrongful termination did not need a separate EEOC charge because the alleged retaliation resulted from her filing of the First Charge.  Finally, it determined that any claims arising from the Second Charge that were based on adverse actions that occurred before October 29, 2020, were time-barred.  At bottom, the district court dismissed all claims except Dowdell-McElhaney's:

> (1) ADEA claim based on her non-selection to the First Party Fraud Team; (2) retaliation claims related to other claims that are not dismissed; (3) Title VII, ADA, and ADEA claims related to allegations in the [S]econd Charge which occurred on or after October 29, 2020; and (4) FLSA claim.[2]

---

[2] On appeal, Dowdell-McElhaney states that the district court's order granting partial judgment on the pleadings to TSYS and Global was a "proper ruling for the most part." Accordingly, she challenges only the district court's subsequent summary judgment order, described in more detail above.

C. *Motion for Summary Judgment on Remaining Claims*

After the district court entered partial judgment on the pleadings, TSYS and Global moved for summary judgment on the remaining claims. First, they argued that summary judgment was warranted on Dowdell-McElhaney's FLSA claim because Dowdell-McElhaney admitted during her deposition that she could not recall any week where she did not receive the overtime pay she was entitled to. Second, they argued that Dowdell-McElhaney could not establish a *prima facie* ADEA claim for her non-assignment to the First Party Fraud Team because assignment to the team was merely a work assignment, not a promotion, and thus her non-selection did not amount to an adverse employment action. Third, they argued that her one-day suspension for copying an email that included a customer's credit card number was not a material adverse employment action as it resulted in no loss in pay, and therefore she could not make a *prima facie* retaliation claim based on the suspension. Alternatively, they argued that even if she could make out a *prima facie* claim for the suspension, that the company's one-day suspension of her constituted legitimate, nonretaliatory conduct and Dowdell-McElhaney could not establish that their justification for the suspension was pretextual. Finally, TSYS and Global argued that they were entitled to summary judgment on Dowdell-McElhaney's retaliation claims regarding her termination on multiple grounds, including: (1) she could not identify a similarly situated comparator who was not fired after being found to have engaged in call avoidance; (2) TSYS had legitimate, nondiscriminatory, and nonretaliatory reasons for terminating

Dowdell-McElhaney, namely her history of call avoidance; and (3) Dowdell-McElhaney could not establish that TSYS's legitimate reasons for terminating her were pretextual.

Dowdell-McElhaney opposed the summary judgment motion. She argued that a jury should get to decide whether her non-selection to the First Party Fraud Team was an adverse employment action because it was unclear if members of the team received an increase in pay based on their position on the team. Next, she argued that the district court should deny summary judgment on the retaliation claims because TSYS's justifications for terminating her lacked merit and she had identified several white, male employees who were not fired, despite causing the company to suffer financial losses.[3] Thus, she asserted that a jury should be allowed to decide whether her termination was retaliatory or based on discrimination. Dowdell-McElhaney did not argue that summary judgment should not be granted on her FLSA claim.

The district court granted summary judgment on all of Dowdell-McElhaney's remaining claims. With respect to the FLSA claim, the district court noted that Dowdell-McElhaney had not argued in opposition to the entry of summary judgment. Additionally, the district court noted that her testimony established that she could not identify any pay period for which she was not paid her entitled overtime wages. Indeed, she admitted during her

---

[3] In making this argument, Dowdell-McElhaney asserted that her one-day suspension was not the basis of an independent retaliation claim but was instead important context for her ultimate termination.

deposition that she never had any "problem whatsoever" with her overtime time and that it was always "on time and accurate."

As to her claims arising out of her non-selection to the First Party Fraud Team, the district court determined that, under the *McDonnell Douglas*[4] burden-shifting framework, Dowdell-McElhaney could not establish she suffered an adverse employment action and thus could not establish a *prima facie* case of discrimination. Specifically, the district court determined that the evidence, including TSYS's pay records, established that no members of the First Party Fraud Team received a raise in conjunction with their assignment to the team. Instead, the evidence showed that the only pay raises any comparator received were merit-based and unrelated to the work assignment.[5] Furthermore, the district court determined that Dowdell-McElhaney had failed to provide any evidence that "being designated as a member of the [First Party] Fraud Team and/or being transferred to that position [was] sufficiently significant so that not being chosen for it would be a serious and material change in the terms, conditions, or privileges of employment." Thus, the district court determined that TSYS and Global were "entitled to summary judgment" on this claim because Dowdell-McElhaney

---

[4] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[5] Notably, Dowdell-McElhaney also received a merit-based raise around the same time as her would-be comparators.

had not suffered an adverse employment action in not being selected to the team.[6]

Regarding Dowdell-McElhaney's claim that she was fired for discriminatory and retaliatory purposes, the district court determined (1) Dowdell-McElhaney's discriminatory termination claim failed because she could not point to a similarly situated comparator to make out a *prima facie* case of discriminatory termination, and even if she could make out such a case, that she had provided zero evidence that TSYS's justification for firing her was pretextual; and (2) Dowdell-McElhaney had failed to provide any evidence of a causal connection between her termination and her filing of her EEOC charges. The district court rejected Dowdell-McElhaney's proposed comparators because, while their

---

[6] As an alternative basis for granting summary judgment on Dowdell-McElhaney's failure to promote claim, the district court determined that she had failed to produce evidence to show that TSYS's legitimate, non-discriminatory reasons for not assigning her to the First Party Fraud Team were pretextual. Specifically, Anderson did not recommend Dowdell-McElhaney for assignment to the First Party Fraud Team because he felt her skillset was not well-suited for the team. Unlike other fraud division members, members of the new team would be required to investigate suspected fraud "where the nature of the fraud was less certain." Thus, cardholders on the new team "needed strong skills in dealing with upset customers and gathering and responding to new information," whereas Dowdell-McElhaney's role required her only to "handl[e] calls for which she could be fully prepared, follow a script, and generally deal with cardholders who were not upset." The district court rejected Dowdell-McElhaney's argument that her prior evaluations and merit pay raises were inconsistent with TSYS's justification, and thus evidence of pretext, because her "success in her prior role [did] not rebut TSYS's proffered reason for declining to assign her different duties."

conduct may have resulted in losses to TSYS, those individuals did not engage in call avoidance, have the same employment and disciplinary history as Dowdell-McElhaney, or share the same supervisors as her.  Thus, the district court determined she could not make out a *prima facie* case of discriminatory or retaliatory termination.  Alternatively, the district court held that even if Dowdell-McElhaney could make out such a case, she nevertheless failed to provide any evidence that TSYS's valid and nondiscriminatory reasons for terminating her employment were pretext for a discriminatory purpose.  As to Dowdell-McElhaney's claims that she was fired in retaliation for filing the EEOC charges, the district court noted that TSYS fired Dowdell-McElhaney more than a year after she filed her first EEOC complaint.  To the extent that Dowdell-McElhaney was relying on the issuance of her second right to sue letter as the basis of retaliation, the district court noted that there was no evidence that TSYS was aware of this second letter.  Thus, it granted summary judgment to TSYS and Global on Dowdell-McElhaney's termination claims.

In sum, the district court granted summary judgment on all of Dowdell-McElhaney's remaining claims.  Dowdell-McElhaney timely appealed.

## II.    Standard of Review

We review a district court's grant of summary judgment *de novo*.  *Owens v. Governor's Off. of Student Achievement*, 52 F.4th 1327, 1333 (11th Cir. 2022).  Summary judgment is proper if there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law. *Id.* All submitted evidence is viewed in the light most favorable to the non-moving party. *Id.*

### III.    Discussion

Proceeding *pro se* on appeal, Dowdell-McElhaney raises three broad arguments. First, she argues that the district court erred in granting summary judgment on her failure to promote claims. Second, she argues that the district court erred in granting summary judgment on her claims that she was terminated either due to discriminatory reasons or in retaliation for filing her EEOC complaints. Finally, she argues that the district court erred in granting summary judgment on her FLSA claim. For the reasons discussed below, we disagree and affirm the district court's judgment.

### A. *Failure to Promote Claim*

Construing Dowdell-McElhaney's briefing liberally, it appears she raises several arguments as to how the district court erred in granting summary judgment to TSYS and Global on her failure to promote claims. First, she appears to argue that the district court erred by determining she had not suffered an adverse employment action in not being selected to the First Party Fraud Team. In making this argument, she asserts that her merit-based raise wasn't as high as those selected to the team, and therefore she speculates that their higher raises must have been due to their selection—despite the fact that the merit raises occurred prior to selection to the team. Second, she argues that "direct evidence of discrimination exists," although she does not elaborate as to what

this evidence is.   In making this argument, she asserts that "testimony will substantiate that said position did in fact, accompanying [sic] a pay raise."[7]

Upon review, we find no error in the district court's entry of summary judgment on Dowdell-McElhaney's failure to promote claims because (1) the evidence clearly showed that non-selection to the First Party Fraud Team did not constitute an adverse employment action and thus Dowdell-McElhaney cannot make out a *prima facie* discrimination case; and (2) even if she could make out a *prima facie* case, she has not provided any evidence that TSYS's legitimate reasons for not assigning her to the team were pretext for a discriminatory purpose.

The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  To prove an ADEA claim, Dowdell-McElhaney is required to establish that TSYS took an adverse employment action against her because of her age. *Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015).  This can be shown through either direct evidence or circumstantial evidence.  *Id.*  "We have explained that only the

---

[7] Dowdell-McElhaney bases this argument on her own testimony that a member of the First Party Fraud Team told her that selection to the team "came with a pay increase," although she admitted that she "c[ouldn't] say for certain because" she was "a little foggy when it comes to all the details."

23-10334              Opinion of the Court                17

most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 922 (11th Cir. 2018) (quotations omitted). When, as here, there is no direct evidence of discrimination, we look to circumstantial evidence and the *McDonnell Douglas* framework is often applied.[8] *Id.*

Proceeding under the *McDonnell Douglas* framework, Dowdell-McElhaney bears the initial burden of establishing a *prima facie* case of age discrimination by showing "(1) that she belongs to

---

[8] Although Dowdell-McElhaney argues on appeal that there is direct evidence of discrimination, she has not pointed to any "blatant remark" made by TSYS "whose intent could mean nothing other than" that its decision to not assign her to the First Party Fraud Team was based on her age. *Jefferson*, 891 F.3d at 922 (quotation omitted).

Furthermore, while Dowdell-McElhaney argues for the first time on appeal that she "demonstrated a convincing mosaic of circumstantial evidence that merits an inference of intentional discrimination on all her claims" and speculates that TSYS and Global "are improperly withholding evidence," we have recently noted that "a 'convincing mosaic' is a metaphor, not a legal test and not a framework." *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1311 (11th Cir. 2023). Thus, no matter how Dowdell-McElhaney intends to show discrimination, "the ultimate question . . . is whether there is enough evidence to show that the reason for an adverse employment action was illegal discrimination." *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 941 (11th Cir. 2023). As discussed herein, even assuming her non-selection to the First Party Fraud Team constituted an adverse employment action, she has failed to provide any evidence that would lead a reasonable juror to conclude that she was not selected for the team because of her age.

a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably." *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc). If Dowdell-McElhaney states a *prima facie* case, then TSYS and Global must proffer a legitimate and non-discriminatory reason for its decision not to assign Dowdell-McElhaney to the First Party Fraud Team. *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013). If they offer such a justification, the burden shifts back to Dowdell-McElhaney to show that the proffered reason was pretext for discrimination. *Id.*

Here, Dowdell-McElhaney cannot make out a *prima facie* case because she cannot establish the second element—the requirement that she was subjected to an adverse employment action. TSYS's decision to not assign Dowdell-McElhaney to the First Party Fraud Team was not an adverse employment action. The evidence—including TSYS's pay records—showed that none of the employees selected to the team received a pay raise because of their selection. Furthermore, aside from the fact that assignment to the team did not correlate with increased compensation, Dowdell-McElhaney has failed to produce any evidence that the failure to select her to the team otherwise altered the "terms, conditions, or privileges of [her] employment." 29 U.S.C. § 623(a)(1). Accordingly, she has failed to make out a *prima facie* case of age discrimination for TSYS's failure to assign her to the First Party Fraud Team.

Even if Dowdell-McElhaney could make out a *prima facie* case, she has failed to produce any evidence that could lead a reasonable juror to conclude that TSYS's legitimate and non-discriminatory reasons for not assigning her to the team were pretext for discrimination. As discussed in footnote 6, Dowdell-McElhaney's supervisor provided a sworn statement that he did not recommend her to the team because he felt her skillset was not well-suited for the team. Specifically, he felt she lacked the skills necessary to investigate claims where the nature of the fraud was less certain. Instead, he felt she was better suited for her role where she could read from a script and in general not have to deal with clients who were upset. Because Dowdell-McElhaney has not provided any evidence to show that this proffered reason was pretext for discrimination, her failure to promote claim fails.

### B. *Discriminatory and Retaliatory Termination*

Dowdell-McElhaney argues that she was fired "because of [1] her age, sex, race, and disability[;] and [2] in retaliation for filing her first EEOC Charge." She argues in a conclusory manner that that she testified about comparators "whose conduct resulted in million dollar losses for . . . TSYS" and that there is "ample evidence to create [a] genuine factual dispute as to [TSYS's and Global's] reason for her termination was a pretext for discrimination" and that she denies "categorical[l]y a continuing pattern of call avoidances."

Upon review, we determine that the district court did not err in granting summary judgment to TSYS and Global on

Dowdell-McElhaney's retaliation claim. Even assuming Dowdell-McElhaney could make out a *prima facie* case, she has failed to provide any evidence that TSYS's justification for firing her was pretext for discrimination or retaliation.

Like her ADEA claim for failure to promote, Dowdell-McElhaney's unlawful termination claims under Title VII, the ADA, and the ADEA are governed by the *McDonnell Douglass* burden-shifting framework. *McDonnell Douglas*, 411 U.S. at 802–03; *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004); *Wright v. Southland Corp.*, 187 F.3d 1287, 1305 (11th Cir. 1999) (Title VII, ADA, ADEA). Thus, even if she can establish a *prima facie* case for unlawful termination under any of the three statutes, the burden shifts to TSYS and Global to proffer legitimate, nondiscriminatory, and nonretaliatory reasons for terminating her employment, which they have done. *See Lewis*, 918 F.3d at 1221. TSYS fired Dowdell-McElhaney because an investigation revealed that she engaged in a pattern of call avoidance, whereby she falsely indicated she contacted customers regarding potential fraud when, in actuality, she had not done so. Because TSYS and Global carried their burden, Dowdell-McElhaney was required to "demonstrate that [their] proffered reason was merely a pretext for unlawful discrimination[.]" *Id.* She has failed to provide any evidence, aside from her own opinion, that TSYS's justification was pretext. Accordingly, she has failed to meet her burden and we affirm the district court's grant of summary judgment on her termination claims.

### C.  FLSA Overtime Hours Claim

The FLSA requires that employers compensate covered employees for hours worked in excess of 40 hours per week at 1.5 times the employee's regular pay rate.  29 U.S.C. § 207(a)(1).  On appeal, Dowdell-McElhaney argues that the district court erred in granting summary judgment on her FLSA overtime claim, while at the same time admitting that she "[does] not know of any weeks for certain where she worked overtime hours" but "she just knew that she was more than likely not being paid properly for overtime pay[.]"  Setting aside the fact that Dowdell-McElhaney did not argue below that summary judgment was not warranted on her FLSA claim, and she therefore waived any argument to the contrary on appeal, *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004), her failure to provide any evidence of any week where she was not properly paid for overtime hours is fatal to her claim on summary judgment.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (noting that summary judgment is required "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" after discovery has occurred).  Accordingly, we affirm the district court's grant of summary judgment on Dowdell-McElhaney's overtime claim.

## IV.    Conclusion

For the above reasons, we affirm the district court's judgment.

22                    Opinion of the Court                    23-10334

AFFIRMED.